*State vs. Hodgeden.*

———————

### Isabella Smith *vs.* John L. Woods.

*Orange, March, 1831.*

An *ex parte* deposition, filed with the clerk *less* than thirty days before court, but remaining there through the term, and till the succeeding term of the court, may then be read.

In an action of *account* against one as bailiff and receiver, the plaintiff's interest must not be joint with any other person.

Plaintiff is entitled to an accounting for notes in defendant's hands, and money received upon such notes, though the plaintiff was *feme covert* at the date of the notes, but not so when they became binding upon the signers.

Such notes being payable to the defendant, does not obstruct the plaintiff's recovery, if they were executed for the *sole* benefit of the plaintiff.

This action was tried in the county court, and the plaintiff obtained a verdict. The defendant filed exceptions to the decisions of the court, upon which the action was brought up to this court. These exceptions give a full history of the case, and were as follow :

" This was an action of *account* against the defendant as *bailiff* and *receiver* of certain notes, signed by Andy L. Smith, and by said Andy and another person, as his bail ; and of certain monies received by the defendant upon said notes. Plea, that *the defendant was not bailiff and receiver to the plaintiff.* On the trial of the action, testimony was introduced, tending to prove, that, in the year 1815, the plaintiff was the lawful wife of said Andy L. Smith, having two small children ; that said Andy deserted her, and went to the state of New York, and lived with another woman for many years ; that the plaintiff supported herself and children by her labor and the property left by the said Andy, a year or two, when she broke up house-keeping, and went, with her children, and lived with her father, John Scott ; that she labored there in the family, as one of the family, for some time—it did not appear exactly how long; that she went and lived at Wells-River for the purpose of educating her children ; that she was alternately at and from her father's for several years ; that one of her children was there the most of the time, and the other not ; that, while there, they received their support from the said Scott, except what was compensated by the plaintiff's labor, and the labor of said children. One witness testified, that such labor paid, or nearly paid, for said support. The evidence further tended to prove, that, for three or four years next previous to the first of March, A. D. 1825, the plaintiff did work and labor for said defendant as his house-keeper, and that, in March, aforesaid, an arrangement was made by and between the plaintiff and defendant, for the defendant to go to the westward and procure, from the said Andy L. Smith, something for the past and future support of the plaintiff and her children ; that, as the plaintiff was then the wife of the said Andy, and could support no claim at law against him for such support, *Woods* proposed to John Scott, the father of the plaintiff, that the account for such support should be made out in the name of Scott, who also should execute to *Woods*, a power of attorney to prosecute the same ; that Scott hesitated, saying, he had no interest in it, and wished to do nothing but what was right ; that upon being reminded, that the plaintiff could not sue in her name, Scott consented, and signed said

ORANGE,
March,
1831.

Smith
vs.
Woods.

account and power of attorney, which were prepared by Woods, and then, and at other times, said it was for the benefit of the plaintiff; that said defendant went to the westward, found said Andy L. Smith, and commenced a suit against him in favor of Scott, and also procured a warrant against him on a charge of bigamy; and afterwards effected a settlement with said Smith, in which he procured the notes in question, being eight notes of $100 each, signed by said Smith and his surety, and two notes of eighty six dollars each, signed by Smith alone, and payable one in each year, successively, for ten years; which notes were made payable to Woods, and were lodged with a third person, agreed upon by Smith and Woods, to remain till Woods should, without any expense to Smith, procure for the plaintiff a bill of divorce from Smith; which bill was obtained at the Supreme Court in September, 1825; and Woods discharged the demands, Scott vs. Smith; soon after which, said notes came into the possession of the defendant, and he received the pay on some of them to the amount of three or four hundred dollars; that the plaintiff after said divorce, and after the notes came into the possession of the defendant, and before the commencement of this suit, called upon the defendant for a settlement, and demanded said property; and that the defendant refused or neglected to deliver it up; that defendant told said Andy, when the notes were given, that all was for the benefit of the plaintiff; and was heard to say the same on several other occasions; and that said Scott died about a year and a half ago, and left no account or claim for any of this property; and always, in his life time, said he had no such claim. But there was no evidence of any assignment of the same, or any part thereof, by Scott to the plaintiff. The depositions of William Wood, Henry Wells, Solomon Goodall, Andy L. Smith, and of Samuel Hutchins were read and made a part of the case. The deposition of Goodall was adduced by the plaintiff, and objected to by the defendant, on account of a defect in the caption, and because it was not filed in the clerk's office thirty days before the term of the court, to which the same was made returnable; but the court learning that said deposition had been exhibited in court last June term, and been on file in the clerk's office ever since, overruled the objection. The administrators of Scott's estate testified, that there was no claim in favor of said estate for said notes and money, nor any account for the same. There was also read an account current between the plaintiff and defendant, in the hand writing of the defendant, which is made a part of the case. The defendant also read in evidence a contract in writing,

Orange,
*March,*
1831.

Smith
*vs.*
Woods.

entered into by certain persons in the state of New-York, dated April 25, 1825, and made a part or the case. The defendant objected to the plaintiff's proving her beneficial interest in said notes and money, by parol testimony, but the court overruled said objection and admitted the same.

The defendant requested the court to instruct the jury, that this action of account could not be supported in favor of the plaintiff, but must be pursued, if at all, in the name of John Scott, or his legal representatives ; or the plaintiff must resort to a court of chancery for relief. But the court declined so to instruct the jury, and did instruct them, that though the plaintiff was a married woman at the date of said notes, yet if she had a beneficial interest in said notes and money, and the defendant knew and recognized this her interest after said divorce, the defendant was to be regarded as *bailiff* and *receiver* to the plaintiff after the granting of said divorce ; and that, if they should find, that the plaintiff had during that time, the whole beneficial interest in said money and notes, and that recognized by *Woods*, they should find for the plaintiff; but if they found any part of said notes and money to belong to the estate of John Scott, to find for the defendant.

The jury found a verdict for the plaintiff ; to which decision and charge, and refusal to charge, the defendant excepts, and his exceptions are allowed."

*J. Mattocks, for the defendant.*—The defendant's counsel contend, that the plaintiff is not entitled to account, because she, being *feme covert* when the defendant went to the westward and procured these notes, could not appoint him her *bailiff* and *receiver.* And her interest, before, and after her coverture ceased, cannot be severed, And the defendant's admitting her interest cannot entitle her to recover in her own name. The business was done for Scott, the plaintiff's father; the defendant acted under a power of attorney from him, and was accountable to him. He went to secure a debt in favor of Scott; and the action, if it will lie at all, should be in favor of Scott's administrators.

2d. Parol or verbal evidence ought not to have been admitted to contradict, and explain away, the settlement of *Woods* with Andy L. Smith, and transfer the apparent liability of *Woods* to John Scott, and make it enure to the plaintiff.

3d. A bill in chancery, in favor of the plaintiff against *Woods* and John Scott's representatives, was the only remedy between Scott's estate and the plaintiff, which would also protect *Woods,*

At any rate, account will not lie, even if she could recover, in an action for money had and received, the money he received after the divorce.

4th. The deposition of Ira Goodall ought not to have been received. The statute requires, that an *ex parte* deposition shall be filed with the clerk, and opened for the inspection of both parties, thirty days before the court to which it is taken to be used. This is an *ex parte* deposition, and it was not so filed.

*Argument in behalf of plaintiff.*—The question is, whether the property in the hands of defendant, and obtained as stated in the case, is in such sense the property of plaintiff, that she can sustain this suit at law for its recovery ; or whether she must be turned round to a suit at law in the name of the administrator of John Scott, or to a bill in chancery, to obtain her right.

It is contended, that though the proceedings were at first had in the name of John Scott, as a trustee for the plaintiff; yet, after the bill of divorce was obtained, so that plaintiff could hold in her own right, (and the obtaining the divorce was a condition precedent, on which the notes were to be delivered, and were in fact delivered,) that, then, the subsequent delivery of the notes, expressly for the benefit of the plaintiff, constituted the defendant the agent or trustee of the plaintiff; and John Scott was no longer in the way, or had any legal or equitable interest in the property. John Scott never had any equitable interest in the subject of this controversy. The account in his name was merely the measure, by which the sum allowed the plaintiff for her past and future support was meted out; but it was not the meritorious cause, or consideration, or even inducement to any allowance.

The consideration and inducement to the allowance was the support of the plaintiff; but this could be yielded only on the ground of her obtaining the divorce. The whole transaction and the rights of all the parties were in abeyance till this was done. And, on the performance of this condition, the notes became due to the defendant ; but the title, the legal title, became then vested in the plaintiff; and, from that time, the defendant became the bailiff and receiver of the plaintiff, and John Scott had no longer any legal interest in the property. The notes being delivered, and the money, so far as collected, being received after the divorce, and in consequence of that condition being performed, the property became vested in the plaintiff ; and she immediately acquired the right to call defendant to account. Neither plaintiff,

MMM

ORANGE,
*March,*
1831.

Smith
*vs.*
Woods.

defendant, nor John Scott, had any interest, claim, or cause of action, on the notes, till the bill was obtained. Until the fulfilment of that condition the mere naked right of action rested in defendant. But for whose benefit? who had the legal and equitable right to the money received thereby? Surely not John Scott. For whose benefit was the expedition undertaken? For whose benefit did Smith agree to give the money? and who performed the conditions, on the performance of which, the notes, and money secured thereby, became due? Law, equity, reason, and common sense, all respond to each of these enquiries, *Isabella Smith!* The defendant engaged and promised Andy L. Smith to account for it to plaintiff for her support, and, on that consideration, and her obtaining a divorce, he agreed to furnish the money. Now, whose money is it? So far as money has been received on those securities, cannot plaintiff maintain money had and received? Is it not money received to her use? If not, to whose use was it received? Not to the use of John Scott; he had no interest in it. It was not designed for him. He paid no consideration for it. If recovered in his name, the plaintiff might maintain money had and received against him, or his representative, to recover it back. Why this circuity of remedy?

It is believed, not only, that the plaintiff can maintain this action, but that no other person could maintain a suit at law or in equity, to adjust this controversy. Surely neither John Scott, nor his representative, could sustain any suit. The legal interest, the right of action on the notes, is in defendant; the legal and equitable interest, in the money secured by them, is in plaintiff. The notes were given for money equitably due to the plaintiff, but made payable to one, whom she had employed as her agent. Now, is it possible to say, that the circumstance of defendant's making out an account, and taking a letter of attorney from John Scott, who was merely nominal, and had no interest in the subject matter of this transaction, can vary the legal, or equitable, rights, liabilities, or remedies, of the parties? It would seem impossible. The jury have found, under the charge of the court, that John Scott had no interest in the property secured by the notes in question.

The Court will probably expect us to cite no authorities in this case. There is no objection to the form of action. But the question is, on general principles of law, to whom does the legal and equitable property in the notes, and the money secured thereby, belong? In other words, do they belong to the plaintiff

in such sense, that she can sustain an action at law for their recovery?

We refer the Court to 12 *Mass. Rep.* 183, *Chickering* vs. *Hosmer*; 4 *Burr. Rep.* 2069, *Faikney* vs. *Reynous, et al.*; *Blake's Chancery*, 30, 31.

ORANGE,
*March,*
1831.

Smith
*vs.*
Woods.

HUTCHINSON, C. J., *pronounced the opinion of the Court.*— We will first dispose of the objecton to the deposition of Goodall. This deposition was taken without notice to the opposite party, and taken to be used at June term ; and was filed with the clerk, but not so many as thirty days previous to said term. The action lay over from June to December term, and this deposition remained on file ; it was then admitted to be read, though objected to by the defendant. This filing of the deposition is not at all within the statute in reference to the June term of the court. It was not within the letter of the statute, in reference to the December term following: but for this term, its filing was perfectly within the object and meaning of the statute. The evils that existed before the statute were, that a deposition might be taken without notice, and presented and read on trial ; and the opposite party have no possible opportunity to cross examine the witness, or procure him to attend court, and testify on the stand, or to procure the attendance of witnesses, acquainted with the deponent, and who would impeach his character for truth. The statute remedy for these evils is, that the deposition shall not be read, when thus taken without notice, unless filed, and lodged with the clerk and open for the inspection of both parties, thirty days before the term, at which it is taken to be used. This would enable the opposite party to prepare to meet the deposition in any of the ways allowed by law. He might give notice, and take the deposition of the same witness, that may operate as a cross examination, or procure him to attend in person. This statute regulation answers a valuable purpose, also, for the party who wishes to use it. If there is any defect in the certificate of the caption, he can know it thirty days before court, and have time to prepare his testimony anew. With propriety, also, may the deposition bear more weight, when the opposite party has this opportunity to impeach, or otherwise meet it, than when his first notice of it is its production on trial. Now all these objects are as fully attained, and perhaps more so, by the deposition's being on file six or eight months, as if it were there thirty days only. We consider, that there was no error in admitting this deposition.

Orange,
March,
1831,

Smith
vs.
Woods.

The only remaining questions are, whether the court correctly admitted parol testimony to show, who was the actual owner of these notes, notwithstanding the writings of John Scott, and the notes being made payable to the defendant; and whether the instructions given the jury were correct.   The bare statement of the case forces to a decision, that the parol evidence was correctly admitted; otherwise, an agent would forever screen himself from liability to any one, by taking notes to himself, which belonged to his employer.   We know of no law against proving, by parol, a trust with regard to personal property, or personal agencies, or personal securities, indeed, all trusts, except those concerning real estates, affected by restraining statutes.   This testimony does not contradict the writings at all, as suggested by defendant's counsel.   In reference to a suit upon the notes, they speak for themselves, and must be sued in the name of the nominal payee, or legal assignee; and this cannot be varied by parol testimony.   But a person owning a note, not payable to himself, nor indorsed to him, if it is converted by another, may maintain trover for it, in his own name, as well as if it were payable to him.   He must give it a true description; but alleging, and proving, himself to be the owner, gives him the cause of action in his own name.   Just so, if defendant has received, and has in his possession, notes payable to himself or any one else, parol evidence is admissible to prove, that he received them as *bailiff* of the plaintiff; and such evidence will support the action of account as *bailiff.*

Upon the same principle, parol evidence is admissible to show, that the demand, in favor of Scott against Andy L. Smith, was equitably a demand of the present plaintiff, but made out and forwarded in the name of Scott, her father, as the most prudent and efficacious method of securing and collecting it; yet entirely for her benefit.   Scott, having no claim against Andy L. Smith, which he supposed legal, or which he was disposed to set up against him, for he intended what he had done for his daughter as a gift to her, yet he was willing to become her trustee, and let his name be used for her benefit.

These facts may as well be proved by parol, as any other facts whatever.

This brings us to the consideration of the instructions given to the jury.   Here, we may observe in the outset, that, though the notes, which are the object of this suit, are made payable to the

Orange,
March,
1831.

Smith
vs.
Woods.

defendant, and are in his possession, he has no pretence of owning them, any farther than the amount of his lien for his expenditures and services in the business of his agency. He does not pretend to have gone to the westward to secure this debt for himself; but to have gone as agent for some person. His lien we are disposed to protect. Whoever would now claim that he acted as their agent in this transaction, must admit his lien upon these securities for his reasonable compensation. Had the defendant been willing, upon satisfaction of this lien, to deliver over the residue of these securities and money, and assign them without recourse, that would have been all that could have been required by any one claiming to be owner. But the case shows that he refused to deliver them up, without predicating any excuse upon his lien.

The defence before the jury, in this case, consisted chiefly in a denial of the plaintiff's right to demand, and receive this property. It is urged, that the defendant, if liable at all, is liable to Scott's representatives; for he acted in Scott's name, and by virtue of a power of attorney from him : and the plaintiff was then a *feme covert*, and could make no *bailiff*.

The testimony, which we have now decided was correctly admitted, shows that Scott had no interest in the matter ; and even entertained doubts of the propriety of shaping the writings so as to sanction a pursuit in his name. To this, however, he assented, affirming that he had no interest in it ; that it was all for his daughter, the plaintiff. He has since died, leaving no account or writing, which intimates any claim of his to this property. The assertions of this defendant, and of Andy L. Smith, tend to show, that the plaintiff, and not Scott, was the beneficial owner of this property. As to the plaintiff's being then *feme covert*, and destitute of power to make a contract, which would constitute the defendant her *bailiff*, this presents a difficulty more plausible than substantial. The defendant did not urge this objection, when he undertook the business, which terminated in the procurement of these notes. And these notes were executed on the express terms, that they were to be of no force, till the plaintiff should be rid of her coverture, by obtaining a bill of divorce from said Andy L. Smith ; and all this with the understanding of all parties, that these notes would then be for her benefit. She obtained the divorce, and became able to contract, and appoint a *bailiff*. She then affirms her former proceedings, and continues the defendant her *bailiff*, and as such he receives the notes from

him to whom they were before delivered as an *escrow*, to await this very event of her divorce. Therefore, though the plaintiff was a *feme covert*, when the notes were written and signed as an *escrow*, that difficulty was over, before the notes had any binding force upon the signers, and before the defendant received them into his custody. If the jury found the facts thus, as they probably might, the plaintiff was the substantial owner of these notes ; and the defendant received them in trust for her, and was her *bailiff*, and ought to account. Such were the instructions to the jury, upon this point. But, upon the question of Scott's interest, the instructions were as contended by the defendant, that the plaintiff could not recover, if Scott was sole owner, or owned jointly with the plaintiff ; that, in the last case, the plaintiff must resort to chancery.

The judgement of the county court is affirmed ; and auditors must be appointed to take the account. These auditors must consider, that the defendant had a lien upon the notes first payable, for his reasonable cost and charges. They must not consider, that any particular bargain, made by the plaintiff during her coverture, for any particular sum as a compensation, would now be binding upon her ; nor would it in chancery. But she must be considered as having contracted with the defendant to transact this business for a reasonable compensation.

*J. Mattocks*, for defendant.

*Burbank & Marsh*, for plaintiff.